## J. H. HOLTZ, Appellant, v. JOHN PETERSON.

**Place of Delivery:** CONSTRUCTION OF STATUTE: *Tender.* Under Code, section 2098, providing that when a contract for the payment or delivery of property, other than money, does not fix a place of payment, the maker may tender it at the place where the payee resides—when a contract for the sale of cattle fails to specify the place of delivery, it is at the residence of the buyer.

SAME: *Lien.* Under Code, section 2102, providing that if property tendered by the seller requires care, and no person be found to receive it when tendered, the person making the tender shall care for the same, for which he shall have a lien on the property, a seller of cattle has a lien on them for feed given after the time specified for their delivery, only, after tendering them to the buyer, unless the buyer waives such tender.

*Appeal from Emmet District Court.*—HON. GEORGE H. CARR, Judge.

MONDAY, FEBRUARY 4, 1895.

ACTION for the recovery of specific personal property. Judgment for the defendant, and the plaintiff appealed.—*Reversed.*

*Soper, Allen & Morling* for appellant.

*J. G. Myerly* for appellee.

GRANGER, J.—I. The subject of the action is eleven steers which the defendant, in the fall of 1891, contracted to sell and deliver to the plaintiff for the agreed price of two hundred and seventy-five dollars. It is conceded that seventy-five dollars of the purchase price has been paid, but defendant claims a payment of twenty-five dollars more, making a total of one hundred dollars, which plaintiff denies. By the terms of the contract, the balance of the purchase price was to be paid, and the cattle delivered on the first day of May, 1892. The parties are in dispute as to the place of delivery; it being plaintiff's claim that because of a custom known to the parties, and with reference to which they contracted, the cattle were to be delivered at his (the plaintiff's) farm in Kossuth county; while defendant's claim is that, by express agreement, the cattle were to be delivered at his (the defendant's) farm in Emmet county. The court instructed the jury that the place of delivery was that agreed upon, whether it was the plaintiff's farm, by virtue of a known custom, or the defendant's farm, by an express agreement. The court also told the jury that if it failed to find any agreement as to place of delivery, either as the result of a custom or express terms, then the law fixed the place at the defendant's residence The jury specially found that there was no custom established to give rise to a contract under the plaintiff's claim. After the time for delivery, the plaintiff tendered to the

defendant one hundred and seventy-five dollars and demanded the delivery of the cattle at plaintiff's farm, which the defendant refused, claiming two hundred and five dollars; two hundred dollars thereof being the balance he claimed as due on the purchase price, and five dollars for keeping the cattle after the time for delivery. The plaintiff then brought this action, and the jury found generally, for the defendant, fixing the value of his interest in the cattle at two hundred dollars.

II.   Appellant urges, and cites many authorities to show that, where a verdict has not support from any phase of the evidence, a new trial should be granted, and then argues that the value of defendant's interest, as fixed by the jury, is without such support. Speaking alone of his interest, by virtue of the contract price of the cattle, it was on the first day of May, 1892, when they were to be delivered, either one hundred and seventy-five dollars, or two hundred dollars, and which is the correct amount depends on whether or not plaintiff had made the payment of twenty-five dollars.   If it had been paid, the interest was one hundred and seventy-five dollars; and, if not, it was two hundred dollars.   The court instructed the jury, in effect, that, if defendant rightly held possession of the cattle after the first of May, he was entitled to compensation therefor, and that he had a lien on the cattle for its payment; that such claim would constitute a part of defendant's interest.   It is conceded that the value of the keeping is shown to be five dollars.   The court further allowed the jury to add interest to the amount due, if the cattle were rightly held by defendant.   Under this state of the record, appellant's position is that, if the twenty-five dollars had been paid, defendant's interest would be one hundred and eighty-five dollars and five cents.   If it had not been paid, then the interest would be two

hundred and sixteen dollars and forty-three cents. Hence, the finding of two hundred dollars, as the value of the interest, is without support. We do not find it necessary to consider the question of what should be the effect of such a discrepancy in value, conceding it to be such because, as we view the case, it must be reversed; and we notice the question, only, because of its incidental relation to other questions to be considered, that the situation of the case may be better understood on another trial. From the record, it is not possible to know whether the jury found for the plaintiff, or defendant, on the question of the payment of the twenty-five dollars; nor can it be known whether the jury found that the place of delivery was at defendant's farm because of an express agreement, or because of an instruction that, if there was no agreement as to the place of delivery, the law fixed it at that place. The jury found that there was no agreement because of a known custom, as to which the parties contracted. The evidence is not such that we can infer a finding that there was an express agreement to deliver at defendant's farm. It is rather against such an inference. With this situation of the record, the instruction that, in the absence of an agreement, the place of delivery was at the farm of defendant is important.

Code, section 2098, is as follows: "When a contract for labor, or for the payment or delivery of property other than money, does not fix a place of payment, the maker may tender the labor or property at the place where the payee resided at the time of making the contract, or at the residence of the payee at the performance of the contract, or where the assignee of the contract resides when it becomes due." The next section provides how a tender may be made where property is "too ponderous to be conveniently transported"; and the next section, how it may be

done in a case where the contract is in writing, and has been assigned before due. The following is section 2101: "A tender of the property as above provided, discharges the maker from the contract, and the property becomes vested in the payee or his assignee, and he may maintain an action thereto as in other cases." We do not see how the conclusion is to be avoided that these sections control, and that, in the absence of an agreement, the place of delivery is the residence of the buyer. It is true, the phrase "does' not fix a place of payment" does not include in terms the words "or delivery," as before used in the section; but the word "payment" necessarily includes in its meaning both "payment" and "delivery," for, without such a construction, much of the section is meaningless. It must also, for the same reasons, be understood that the word "payee," in the section, means the person to whom property is to be delivered. "Payment" and "payee" harmonize, in a legal sense, somewhat better with the word "labor" than the word "deliver," in the particular sense employed; and yet "payment in labor or property" has ample recognition in the law, and the section provides for the "payment or delivery of property"; and whether the act is, technically, a payment, or a delivery, the legal requirement is the same as to place of performance. Appellee thinks the sections are intended as a means of converting a contract payable in labor, or property, into a money demand. That could hardly be, for the law devolves the duty of payment, or delivery, on the party who is to pay in labor or property, or is to deliver it in discharge of his obligation, and receive payment therefor. It would be the other party, if either, that would seek to change the kind of payment to be made. The statute provides, not the consequences to follow a failure to pay in or to deliver property, so that a money demand may follow, but what the party required to

make such payment, or to deliver property, may do to preserve his rights. It is also said that it was not the design of the statute to change the common law rule as to delivery of property. The parties are in dispute as to the common law rule, and we need not determine it, for the question does not seem to be involved, in view of the statute, which is quite specific, and in terms provides for the delivery of property when there is a contract therefor, and no place of performance is fixed by the contract. It hardly seems to be an open question. We think the instruction is erroneous.

III. There is contention over the holding of the court that defendant, if entitled to the possession of the property, was entitled to a lien on the cattle for the amount of it, appellant urging that defendant is not entitled to a lien. Appellee seems to think a lien exists by virtue of section 1, chapter 25, Acts Eighteenth General Assembly, which provides that "keepers of livery and feed stables, herders, and feeders, and keepers of stock for hire shall have a lien," and urges that defendant was a keeper of stock for hire. The question is somewhat doubtful, but we do not determine it, for we think the case in this respect is governed by section 2102, which follows the other sections cited and quoted, and is as follows: "But if the property tendered be perishable, or require feeding or other care, and no person be found to receive it when tendered, the person making the tender shall preserve, feed, or otherwise take care of the same, and he has a lien on the property for his reasonable expenses and trouble in so doing." This section gives the right to a lien, only, after tender of the property; and, following this rule, it would have been the duty of defendant, to justify a lien, to have made the tender of the cattle at plaintiff's residence, if there was no contract as to place of delivery. But we do not

think a lien would depend, under all circumstances, upon an actual tender. If, for instance, when the time for delivery arrived, plaintiff gave defendant reason to understand that a tender would be useless— as that, if tendered, he would not pay the amount actually due, and to which defendant was entitled on delivery,—the law would not require the useless formality of doing the things essential to a tender, and the plaintiff would be estopped to take advantage of the omission; or, which, in legal effect, would be the same, it would amount to a waiver of the obligation to make the tender. If thus excused from making the tender, the lien would attach the same as if actually made. We think, on another trial, these rules should obtain, and that, if the pleadings do not now prevent the issues for their application, the parties, if so advised, should be permitted to make them.

IV.   A complaint is made, that the court erred in not granting plaintiff a change of place of trial to another county. We think the matter was clearly within the discretion of the court. Some other questions are presented, but, with the trial so changed as to meet the rules of law we give for the government of the case, none of them are likely to again arise. The judgment is REVERSED.